**SO ORDERED.**

**SIGNED this 19th day of March, 2026.**



_____
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Patricia Bell Muhammad, | ) | Case No. 25-80269 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |

## ORDER DENYING DEBTOR'S MOTION FOR SANCTIONS
## FOR VIOLATION OF THE AUTOMATIC STAY

THIS MATTER came before the Court on March 5, 2026, for a hearing on the debtor's *Motion to Compel NCDMV to Cease Stay Violation, Rescind Revocations Ab Initio, and Request for Sanctions and Damages Pursuant to 11 U.S.C. § 362(k)* (Dkt. No. 52, the "Motion") against the North Carolina Department of Transportation, Division of Motor Vehicles ("NCDMV") filed December 29, 2025, and the objection to the debtor's motion (Dkt. No. 115, the "Objection") filed by NCDMV March 3, 2026. Patricia Bell Muhammad (the "Debtor") appeared at the hearing pro se, and Assistant Attorney General Steven C. Wilson, Jr. appeared on behalf of NCDMV.

The Debtor alleges that NCDMV violated the automatic stay imposed by § 362(a) of the Bankruptcy Code (11 U.S.C. § 101 *et. seq.*) by revoking her vehicle registration in an attempt to collect a prepetition civil penalty it had assessed because her vehicle insurance lapsed. (Dkt. No. 52 at 1). She seeks a Court order requiring NCDMV to expunge the revocation from her vehicle record, in addition to

1

an award of actual damages, punitive damages, and costs as sanctions under § 362(k) of the Bankruptcy Code. (*Id.* at 2). In response, NCDMV asserts it did not revoke the Debtor's registration to enforce a civil penalty; rather, revocation was separately required by state law because the Debtor failed to furnish evidence of financial responsibility for her vehicle. NCDMV further asserts that even if revoking the Debtor's vehicle insurance could otherwise be construed as a violation of the automatic stay, its doing so falls squarely under the Bankruptcy Code's § 362(b)(4) exception to the stay for actions of a governmental unit to enforce police or regulatory power.

After review of the record and consideration of the arguments and evidence presented at the hearing on March 5, 2026, the Court concludes that NCDMV did not violate the automatic stay by revoking the Debtor's vehicle registration because it did so in continuation of an action to enforce its regulatory power, as excepted from the stay under § 362(b)(4). For this reason, and as further discussed herein, the Debtor's Motion will be denied.

## I.   BACKGROUND

The Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on November 3, 2025. On her Form 106E/F filed on December 1, 2025, she indicated that NCDMV was the holder of a nonpriority unsecured claim based on a fee related to an insurance lapse. (Dkt. No. 33 at 6). Aside from the assertion in the Motion that NCDMV revoked her registration to collect that fee (or "used a pre-petition debt to justify post-petition enforcement action"), the Debtor provided little context for the alleged stay violation until the hearing on the matter. At the hearing, she explained that she filed this bankruptcy case in part because she knew her vehicle insurance coverage had lapsed, and she anticipated a penalty and revocation of registration by NCDMV. She believed that such an outcome could be prevented or delayed by filing this case. After filing the petition, the Debtor attempted to

2

negotiate with NCDMV to avoid the consequences of the insurance lapse.[1] Unsuccessful, she filed this Motion, prompting the Objection from NCDMV.

In the Objection and through argument and testimony at the hearing,[2] NCDMV provided a more embracive picture of the events leading up to the Motion. The Court finds NCDMV's account credible and adopts its factual allegations as reflected herein.

NCDMV is a statutorily established division of the North Carolina Department of Transportation—a North Carolina state agency organized and enabled by the N.C. Gen. Stat. §§ 20-1 and 136-4 *et seq*. It is responsible for enforcement of the Vehicle Financial Responsibility Act of 1957, which requires, among other things, that any owner of a motor vehicle registered in North Carolina maintain financial responsibility (e.g., liability insurance) for the operation of that vehicle. N.C. Gen. Stat. §§ 20-309(a), (f). NCDMV carries out this responsibility through the administrative procedures outlined in N.C. Gen. Stat. § 20-311, "Action by the Division when notified of a lapse in financial responsibility." Those procedures are at the core of this matter.

On September 17, 2025, NCDMV received notice from the Debtor's liability insurance provider indicating that the Debtor's motor vehicle policy had been terminated on September 14, 2025.  This form was evidence to NCDMV that the Debtor might not have had financial responsibility for the operation of her vehicle as required by N.C. Gen. Stat. § 20-309(a). Two days later, NCDMV received a second notice that the Debtor had procured liability insurance for her vehicle effective September 17, 2025. Together, these notices provided NCDMV documented

---

[1] Many of the Debtor's exhibits reflect emails dating from November and December 2025 between the Debtor and an individual at the DMV regarding the revocation of her plate and the automatic stay. The other exhibits include a report from Orange County Emergency Medical Services and a medical report from a doctor's visit regarding her hand dated March 23, 2015.

[2] At the hearing, the Debtor testified in support of her Motion. NCDMV called Ms. Jennifer Keel, a 35-year NCDMV employee and current Director of Services, in support of its Objection.

evidence of a liability insurance lapse between September 14 and September 17, 2025.

When NCDMV has evidence of a lapse in motor vehicle liability insurance, it is required to notify the vehicle owner of "the evidence demonstrating lapse" so that the owner may respond to "explain how the owner has met the duty to have continuous financial responsibility for the vehicle." *Id.* § 20-311(a).[3] NCDMV sent this required notice to the Debtor on October 17, 2025, but the Debtor did not respond.

When a recipient of the required notice does not respond within 10 days of the date the notice is sent, NCDMV is required to assess a civil penalty and revoke the recipient's vehicle registration. *Id.* § 20-311(a)(4). The amount of the penalty assessed depends on the number of previous lapses the recipient had within the preceding year. *Id.* § 311(b). And the revocation period for a recipient who does not respond to a notice is indefinite, continuing until NCDMV's financial responsibility concerns are resolved. *Id.* § 20-311(c). Aside from the fact that both can arise from a single instance of underlying conduct, the civil penalty and registration revocation are not substantially related. Payment of the penalty does not reverse a revocation issue, nor vice versa. *See id.* §§ 20-311(b), (c).

Because the Debtor failed to respond to the October 17, 2025, notice, her registration was to be revoked. However, NCDMV did not apply these consequences immediately upon expiration of the 10-day response period. Rather, its policy is to do so only after an additional 20-day "grace period" to prevent issues such as routine mailing delays from affecting the outcome of its enforcement procedures. As a result, while the Debtor's response period to the October 17 notice expired on October 27, 2025, NCDMV did not assess a civil penalty or revoke her vehicle

---

[3] N.C. Gen. Stat. § 20-311 requires a response from the owner so that NCDMV can determine whether (1) the owner did not have a lapse in financial responsibility; (2) the owner had a lapse in financial responsibility and still has a lapse; or (3) the owner now has financial responsibility even though the owner had a lapse, but the vehicle was involved in an accident during the lapse or the owner operated the vehicle or allowed the vehicle to be operated during the lapse with knowledge that the owner had no financial responsibility for the vehicle.

registration until November 17, 2025—two weeks *after* the petition date in this case.

Once her vehicle registration was revoked for failure to respond to the notice, the Debtor had the option to resolve that revocation by providing NCDMV with evidence that she had obtained insurance. *Id.* § 20-311(c). While the Debtor made efforts to reverse the revocation, including by suggesting to NCDMV that the automatic stay imposed by her bankruptcy filing required reinstatement of her vehicle registration, those efforts were fruitless because she did not meet any of the conditions for reinstatement under N.C. Gen. Stat. § 20-311(c). In fact, by the petition date, the Debtor had experienced another liability insurance lapse, *See Order Granting Debtor's Mot. for Sanctions for Violation of Automatic Stay* (Dkt. No. 70, ¶ 4), and at no point thereafter did she provide NCDMV with evidence of financial responsibility for her vehicle. Accordingly, NCDMV declined to reinstate the Debtor's registration or expunge her prior insurance lapse from its records.

## II.    DISCUSSION

When a bankruptcy petition is filed, the Bankruptcy Code provides a broad, immediate freeze, or stay, on a variety of actions that might normally be pursued to enforce prepetition obligations or exercise control over property of the debtor or the bankruptcy estate. 11 U.S.C. § 362(a); *see Houck v. Substitute Trustee Servs., Inc.*, 791 F.3d 473, 480–81 (4th Cir. 2015). This fundamental bankruptcy protection is known as the "automatic stay" and is designed to shield debtors from harassment, collection efforts, foreclosure actions, and the like. *See Houck*, 791 F.3d at 480–81. Included in the scope of the stay is "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §§ 362(a)(3), (4). The stay likewise reaches acts that, while not technically attempts to collect on prepetition claims, nevertheless are designed to induce payment of such debt. 11 U.S.C. § 362(a)(6); *see, e.g., In re Kuehn*, 563 F.3d 289, 292-94 (7th Cir. 2009).

The Bankruptcy Code also provides debtors relief for violations of the automatic stay. Section 362(k)(1) provides that "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). A debtor seeking damages for a violation of the automatic stay must establish three elements: "(1) that the defendant violated the stay imposed by § 362(a), (2) that the violation was willful, and (3) that the plaintiff was injured by the violation." *Houck*, 791 F.3d at 484. "To demonstrate there was a willful violation of the stay, the debtor must establish that the party knew of the bankruptcy filing and then took some intentional action." *In re Franklin*, 614 B.R. 534, 544 (Bankr. M.D.N.C. 2020). In the context of an alleged stay violation, the debtor bears the burden of proof by a preponderance of the evidence. *Id.*; *In re Hightower*, 542 B.R. 738, 747 (Bankr. M.D.N.C. 2015) (citing *Clayton v. King (In re Clayton)*, 235 B.R. 801, 806 (Bankr. M.D.N.C. 1998)).

However, the Bankruptcy Code also contains numerous exceptions to the automatic stay for acts that might otherwise run afoul of its protections. 11 U.S.C. § 362(b). Among these is an exception for governmental units acting to enforce "police or regulatory power." *Id.* § 362(b)(4). A bankruptcy petition "does not operate as a stay . . . of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police or regulatory power, including the enforcement of a judgement other than a money judgement." *Id.* "This exception ensures that government agencies can still enforce laws 'affecting health, welfare, morals and safety' and that debtors are not automatically protected in bankruptcy court from such regulatory laws." *Milk Indus. Regul. Off. v. Ruiz (In re Ruiz)*, 122 F.4th 1, 13 (1st Cir. 2024) (citing *In re Universal Life Church, Inc.*, 128 F.3d 1294, 1297 (9th Cir. 1997)).

The Fourth Circuit has explained,

> The difficulty in applying this exception comes in distinguishing between situations in which the state acts pursuant to its "police and regulatory power" and situations in which the state acts merely to protect its status as a creditor. To make this distinction, we look to the purpose of the law that the

state is attempting to enforce. If the purpose of the law is to promote "public safety and welfare," *Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.)*, 128 F.3d 1294, 1297 (9th Cir. 1997), or to effectuate public policy, then the exception applies. On the other hand, if the purpose of the law relates "to the protection of the government's pecuniary interest in the debtor's property," [*id.*], or to adjudicate private rights, then the exception is inapplicable. The inquiry is objective: we examine the purpose of the law that the state seeks to enforce rather than the state's intent in enforcing the law in a particular case.

*Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 865 (4th Cir. 2001) (citation modified). Some laws have several purposes, so courts "must determine the *primary* purpose of the law that the state is attempting to enforce." *Id.*

The Debtor contends that NCDMV violated the automatic stay through its enforcement of the Vehicle Financial Responsibility Act by revoking her registration to induce payment of a prepetition civil penalty. But that argument fails for two reasons. First, as of the petition date the Debtor did not owe a debt to NCDMV so any actions it took to enforce the Vehicle Financial Responsibility Act could not have been to collect a prepetition debt. Second, there is no direct relationship under the Vehicle Financial Responsibility Act between the revocation of a vehicle owner's registration and the assessment of a civil penalty. The Debtor's registration was revoked because she failed to respond to the October 17 notice, which is a statutory requirement independent of the civil penalty assessed. Whether or not she paid the civil penalty, her vehicle registration would not have been restored until she established with NCDMV that she had obtained liability insurance.[4] Since revoking the Debtor's registration was not an attempt to collect any debt, NCDMV did not violate the automatic stay under Bankruptcy Code § 362(a)(6).

Construing the Motion liberally, though, the Debtor might also be understood to allege that NCDMV violated the automatic stay because by revoking her vehicle registration it acted "to exercise control over property of the estate." 11

---

[4] N.C. Gen. Stat. § 20-311 provides, "the revocation period for a revocation based on failure of a vehicle owner to respond is indefinite and ends when the owner (i) establishes that the owner has not had a lapse in financial responsibility, (ii) obtains financial responsibility, or (iii) transfers the vehicle to an owner who has financial responsibility, whichever occurs first."

7

U.S.C. § 362(a)(3). To the degree that the Debtor's vehicle registration and license plate may be construed as property of the estate, this outcome is prevented by the police and regulatory power exception. *Id.* § 362(b)(4).[5]

The purpose of the Vehicle Financial Responsibility Act of 1957 is to "assure the protection of liability insurance, or other type of established financial responsibility, up to the minimum amount specified in the act, to persons injured by the negligent operation of a motor vehicle upon the highways of [North Carolina]." *Harrelson v. State Farm Mut. Auto. Ins. Co.*, 158 S.E.2d 812, 818 (N.C. 1968) (citing *Jones v. State Farm Mut. Auto. Ins. Co.*, 155 S.E.2d 118, 123 (N.C. 1967)). Its provisions, including those NCDMV enforced against the Debtor in this instance, clearly reflect North Carolina's concern for safety and public welfare. Therefore, NCDMV's enforcement of N.C. Gen. Stat. § 20-311 by revoking, and refusing to reinstate, the Debtor's registration is excepted from the automatic stay as action taken to enforce a governmental unit's "police or regulatory power."

For the foregoing reasons, the Debtor's Motion is DENIED in its entirety.

**END OF DOCUMENT**

---

[5] The Bankruptcy Code's definition of "governmental unit" includes a "department, agency, or instrumentality of . . . a State." The Debtor does not dispute, and it is plain to the Court, that NCDMV qualifies as a governmental unit under § 362(b)(4). 11 U.S.C. § 101(27).

<u>PARTIES TO BE SERVED</u>

Patricia Bell Muhammad

Case No.  25-80269

John Paul Hughes Cournoyer, Bankruptcy Administrator
*via cm/ecf*

Vicki L. Parrott, Trustee
*via cm/ecf*

Steven C. Wilson, Jr on behalf of Creditor Division of Motor Vehicles of NC
*via cm/ecf*

Benjamin A. Barco on behalf of Creditor Capital One Auto Finance, A Division of
Capital One, N.A
*via cm/ecf*

Hillary B. Crabtree on behalf of Creditor GEICO Indemnity Company
*via cm/ecf*

Amitkumar Sharma on behalf of Creditor Capital One Auto Finance, a division of
Capital One, N.A., c/o AIS Portfolio Services, LLC
*via cm/ecf*

Patricia Bell Muhammad
180 BPW Club Rd. J05
Carrboro, NC 27510